### C. G. CROTZER v. I. R. SHAWL and NANCY SHAWL.

Middle Section.   June 24, 1927.

Petition for Certiorari denied by Supreme Court, December 3, 1927.

1. **Contracts. Evidence. Parol evidence held inadmissible as varying terms of the contract.**
   Where a written contract was executed by the parties and at the trial they offered parol evidence to show an agreement that the contract was not to be binding after two months, unless agreeable to both parties, held that the parol evidence was inadmissible as varying the terms of the contract.

2. **Contracts. Parol evidence admissible to show conditions relating to the delivery.**
   Parol evidence is admissible to show conditions relating to the delivery or taking effect of the instrument as that it shall only become effective upon certain conditions or contingencies, for this is not an oral contradiction or violation of the written instrument, but goes to the very existence of the contract and tends to show that no valid and effective contract ever existed.

3. **Contracts. Evidence. Test of Admissibility of parol testimony.**
   The test is whether or not the parol testimony tends to show a collateral agreement, independent fact, conditions precedent, or other agreement which is not inconsistent with, or does not qualify any of the terms of the written contract.

Appeal from Chancery Court, Dickson County; Hon. J. W. Stout, Chancellor.

Affirmed.

H. N. Leech, of Clarksville, and Frank S. Hall, of Dickson, for appellants.

Howard E. Brown, óf Dickson, for appellee.

DeWITT, J. Appellants, I. R. Shawl and his wife, Nancy Shawl were the owners of a lot in the town of Dickson, containing a concrete building suitable for an automobile garage and repair shop. Appellee, C. G. Crotzer, an automobile mechanic, entered into an agreement of lease of said property with them on October 28, 1924. The written agreement is as follows:

"We, I. R. Shawl and wife, Nancy Shawl, parties of the first part, and C. G. Crotzer, party of the second part, have this day entered into the following contractual agreement:

"Parties of the first part are the owners of a certain concrete garage, in the Town of Dickson, and bounded on the East by the property of Harry Davis; on the South by College street; on the West by Mulberry street; and on the North by Shawl lot, bought of Alexander, and the parties of the first part do hereby lease same to party of the second part, for a period of one year from and after the first day of November, 1924, to the first day of November, 1925, with privilege in party of second part of an additional one-year period at his option.

"It is agreed that parties of the first part are to have as remuneration fifteen per cent of all net profits from whatever source derived, and fifty per cent of all receipts for storage.

"Parties of the first part reserve privilege of storing all personally owned cars.

"Party of the second part agrees to keep the above styled place of business open at all reasonable business hours, and to run and operate same in a business like way.

"Parties of the first part retain their agency of Chrysler cars, free from the control of party of second part.

"Witness our hands, this the 28th day of Oct., 1924.

"I. R. Shawl
"Mrs. Shawl
"Parties of first part.
"C. G. Crotzer
"Party of second part.

"Witnesses L. B. Hudson."

The bill in this cause was filed by Crotzer on March 26, 1925, to

enjoin the defendants Shawl and wife and their agents from coming about or entering upon said premises, except to store "personally owned cars;" and from interfering with him or his helpers in the conduct of his business in the building; and to recover of the defendants rental at $30 per month for a portion of the building in the rear, occupied and used by defendant I. R. Shawl as a blacksmith and repair shop, it being claimed that this portion was also included in the lease and complainant was deprived of the use thereof.

The defendants filed an answer and cross-bill in which they averred that although said paper writing was signed by the parties and delivered to Crotzer, it was not to take effect, according to its terms, until at the expiration of two months of actual trial to determine the result, or probable profits, the defendants should be satisfied with such results and give their consent that said agreement be fully effective, creating a leasehold for one year, with privilege reserved to Crotzer to extend the term for an additional one year. They denied that said contract of lease was in force for more than the first two months, because the operations of complainant were unsatisfactory to them, and they had declared at the end of two months that they were not satisfied with them and had demanded possession of the property. In other words, they averred that the possession of Crotzer after the first two months was wrongful, and he was liable to them for a reasonable sum as rent for the use of the building for the time during which it was so occupied unlawfully by him. They prayed for decree against Crotzer and the sureties on his injunction bond for such reasonable sum.

Upon the hearing of the cause the Chancellor held that any evidence as to such oral agreement was inadmissible, as it tended to alter or vary the terms of a written contract. After excluding all such testimony, he decreed that under the terms of the contract sued on complainant was entitled to the use and possession of the garage for the period of twelve months, but had forfeited his right to an extension for another twelve months because of his breach of the contract in failing to pay to the defendants anything from the profits of his business during the first year he used and occupied the garage. The decree was rendered on February 9, 1926. He denied to complainant any right to recover rentals for the blacksmith shop, and from this decree the complainant has not presented an appeal.

The Chancellor further referred the cause to the Clerk and Master to ascertain and report what sum was due under the terms of the written contract by the complainant to the defendants or cross-complainants, from the profits of his business for the first year, to-wit: fifteen per cent of all net profits from whatever source

derived, and fifty per cent of all receipts for storage. He adjudged one-half of the costs against the complainant and the other one-half against the defendants. The defendants, or cross-complainants, appealed from the denial of their claim to recover a reasonable monthly rental for the garage from November 1, 1924 to November 1, 1925, against the complainant and sureties on his injunction bond; and also from the action of the Chancellor in excluding the parol evidence aforesaid.

The defendants were dissatisfied with the results of the operations by the complainant during the first two months, for the reason that at the end of that period he tendered in full satisfaction of their share of the profits the sum of $8, which they declined to accept, and thereafter to permit him to use and possess the garage building. They undertook to take advantage of the alleged oral condition that the contract was not to become operative unless at the end of two months they should be satisfied with the results of the business carried on by the lessee. It does appear that the rental value of the property was far more than the amount tendered, but the Chancellor adhered to the terms of the written instrument and decreed that they only should become effective, and to this end he ordered a reference to determine what were the profits during the first twelve months. The principal issue embodied in several assignments of error is, whether or not the Chancellor erred in excluding the parol testimony as to a condition or collateral agreement made prior to or at the time of the execution of the instrument. If this evidence was admissible, then the Chancellor should have sustained the cross-bill and rendered a decree for reasonable rental without reference to the profits. But in our opinion, the Chancellor was not in error in excluding this parol testimony.

According to this testimony the contract was to be in full force for the period of the first two months. The rule is that evidence is not admissible which, conceding the existence and delivery of the contract of obligation, and that it was at one time effective, seeks to nullify, modify, or change the character of the obligation itself, by showing that it is to cease to be effective, or is to have an effect different from that stated therein, upon certain contingencies or conditions, for this tends to vary or contradict the terms of the writing. 22 C. J., 1150. This rule is stated in other language in Williston on Contracts, vol. 2, page 1229 as follows:

"Whether a written contract is sealed or unsealed, it cannot be shown that under a parol, contemporaneous agreement a written contract once effective, was to be terminated by a condition subsequent, or at a time not stated in the writing."

Another general rule is that parol evidence is admissible to show conditions relating to the delivery or taking effect of the instru-

ment, as that it shall only become effective upon certain conditions or contingencies, for this is not an oral contradiction or violation of the written instrument but goes to the very existence of the contract and tends to show that no valid and effective contract ever existed. 22 C. J., 1150. Upon this rule were based the decisions of our Supreme Court in Brady v. Isler, 9 Lea, 356, and Breeden v. Grigg, 8 Bax., 163; Majors v. McNeilley, 7 Heisk., 294; Quarles v. Governor, 10 Humph., 122; McGannon v. Farrell, 141 Tenn., 631, 214 S. W., 432. There are other cases in our reports admitting parol evidence of collateral agreements entered into at the time of execution of written contracts, as in Lyons v. Stills, 97 Tenn., 514, 37 S. W., 280; and cases in which parol evidence was admitted showing conditions or contingencies upon which promissory notes were to become due, in default of which the considerations therefor should fail—as in Bissenger v. Guiteman Bros. & Co., 6 Heisk., 266, Brady v. Isler, supra.

The decisions in Tennessee on this subject are collocated and analyzed in Hines v. Willcox, 96 Tenn., 148, 33 S. W., 914, until the date of decision of said case. In all these cases it appears that parol evidence was held admissible only to show inducements to the contract, collateral agreements made therewith, oral conditions which were part of the contract but not reduced to writing, and conditions upon which contracts were to take effect at all. In Hines v. Wilcox the court said:

> "It must be admitted that, in the multitude of exceptions to the general rule, much confusion has arisen, not only in our State, but elsewhere, so that the exact limit to be placed upon the exceptions depends not only upon the peculiar facts of each case, but also, to some extent, upon the peculiar cast of thought of the individuals composing the court, as is substantially said in Richardson v. Thompson, 1 Humph., 154. Nevertheless the exceptions are as well sustained and based upon authority, as is the general rule, and there remains only the application of the rule and those exceptions to each case as it arises."

The test is whether or not the parol testimony tends to show a collateral agreement, independent fact, condition precedent, or other agreement which is not inconsistent with, or does not qualify any of the terms of the written contract.

The contract in question before us was actually effective for a period of two months. It was not therefore delivered under a condition that it was not to become operative at all unless the condition should be fulfilled. The condition alleged was a condition subsequent and therefore it could not be shown by parol, under the aforesaid rule set forth in 22 C. J., 1150, and applied in a long line of cases cited thereunder.

In Samuel H. Chute Co. v. Latta (Minn.), 142 N. W., 1048, the vital distinction here to be applied was well set forth as follows:

"There is a radical difference between a conditional delivery, which is not to become complete and effective until the happening of some condition precedent, and a complete delivery, which is sought to be defeated by subsequent contingencies that may or may not arise. In the one case, there is no contract until the condition has been complied with. In the other, there is a binding contract, notwithstanding the happening of the contingency relied upon to defeat it. Jamestown Business College Ass'n v. Allen, 172 N. Y., 291, 64 N. E., 952, 92 Am. St. Rep., 740. The very essence of an obligation is its validity and enforcement. Hence an oral agreement, alleged to have been a part of the transaction, that the obligation should not be binding, can never be permitted to be shown, for the writing necessarily determines that very subject to the contrary. An extrinsic oral agreement providing a condition qualifying the operation of a written obligation is ineffective, for an obligation absolute is plainly exclusive of a condition. 4 Wigmore on Evidence, sec. 2435.

"We conceive the correct rule to be that, where a written contract is made and delivered, and nothing remains to complete its execution, parol evidence is inadmissible to prove an understanding that it should not be operative according to its terms (McCormick Harvesting Machine Co. v. Wilson, 39 Minn., 467, 469, 40 N. W., 571), and that evidence that it is to have an effect different from that stated therein, upon certain conditions or contingencies, does vary or contradict the terms of the writing (17 Cyc., 641-643)."

In Litterer v. Wright, 151 Tenn., 210, 268 S. W., 624, parol evidence was held inadmissible to show that prior to the signing of a lease the lessor bound himself to repair a roof on the building leased. This was directly contradictory of the terms of the written lease. The decision was based upon the rule that parol proof of inducing representations to the making of a contract reduced to writing must be limited to matters not otherwise plainly expressed in the writing; the ultimate test being that of contradiction.

The alleged oral agreement cannot be considered as referring to an independent collateral matter, but to the very subject-matter of the written lease—namely, the length of the term specified therein. It therefore had to do with the very essence of the contract itself; and it is impossiblbe to admit it and give it the import contended for by the appellants, without allowing it to substitute an entirely new contract for the old one, and to adjudge the rights of the respective parties thereon. It presents a case which not only

does not fall under any one of the exceptions to the rule, but is in direct violation of it. We are therefore of the opinion that the admission of such evidence would have been a violation of the rule that the parties must be presumed to have merged into a written contract all prior and contemporaneous oral promises and agreements on the subject-matter, and that parol evidence to alter or vary the same, when the contract has become effective even in part, is inadmissible.

Upon the whole we are satisfied with the decree of the Chancellor and it is affirmed. The costs of the appeal will be adjudged against the appellants and the sureties on their appeal bond. The cause will be remanded to the chancery court of Dickson county for further proceedings.

Crownover, J., and Henderson, Special J., concur.