IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# CERAMIC TILE DISTRIBUTORS, INC. v. WESTERN EXPRESS, INC.

**Direct Appeal from the Circuit Court for Davidson County**
**No. 98C-3241      Walter C. Kurtz, Judge**

---

**No. M1999-02039-COA-R3-CV - Decided June 29, 2000**

---

This is a dispute over the value of goods damaged by a common carrier. The trial court awarded the plaintiff the replacement price. The defendant carrier asserts that the evidence preponderates against the court's finding that the goods as delivered had no value. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

CANTRELL, P.J., M.S., delivered the opinion of the court, in which CAIN and COTTRELL, JJ. joined.

Roland M. Lowell, Nashville, Tennessee, for the appellant, Western Express, Inc.

Clifton B. Sobel, Jr., Nashville, Tennessee, for the appellee, Ceramic Tile Distributors, Inc.

**OPINION**

**I.**

Ceramic Tile Distributors, Inc., a Nashville wholesaler/retailer of ceramic tile and installation materials, ordered a shipment of setting and grouting materials from Bostic, Inc. located in Conyers, Georgia. The goods were placed on wooden pallets, shrink-wrapped, and shipped on a Western Express truck. En route, about a block from Ceramic's place of business, the trailer struck a low railroad overpass and was extensively damaged.

A wrecker towed the trailer to Ceramic and left it there. Ceramic's president, Mr. Wheeler, looked into the trailer and determined that the goods were of no use to his company. He refused to accept the shipment and immediately placed an identical order with Bostic for delivery the next day.

Western took the trailer and unloaded the materials in its warehouse. They hired an inspector who testified that only one pallet out of a total of nineteen had suffered any damage. The pictures taken at the warehouse show the materials on the pallets still enclosed in the shrink wrap. The inspector, however, did not offer any proof about the value of the goods.

Mr. Wheeler testified about the purchase price of the replacement materials. There is no issue raised on appeal about that factor. He testified that when he looked into the wrecked trailer the materials from the damaged containers, acrylic additives, powdered materials, and mastic had gotten into the other materials. He testified, "It was a pretty good mess," and further testified, "I couldn't sell the products in that condition. I mean, they were worthless to me. I couldn't get in and unload it." He also saw the goods after they had been placed in Western's Warehouse. He said, "It wasn't in the condition really that I could do anything with it. You know, a lot of the bags were discolored from the liquids and stuff that had gotten on them." As to their value, he said, "They had no value in that state to Ceramic Tile Distributors at all." At another point he said the materials, "[W]as unwantable [sic] for my industry."

The trial court accepted Mr. Wheeler's testimony and held that the goods had no value after the wreck. The court entered a judgment against Western for the purchase price of the replacement goods.

## II.

Under federal law, 49 U.S.C. § 14706(a)(1), the measure of damages to cargo shipped in interstate commerce is the difference between the market value of the property in the condition in which it should have arrived at its destination and its market value in the condition in which it did arrive. *Contempo Metal Furn. v. East Texas Motor*, 661 F.2d 761 (9th Cir. 1981). The trial court found that the value of the goods in good condition was the purchase price, and that the value after the wreck was zero. These findings are presumed to be correct, unless the preponderance of the evidence is otherwise. Rule 13(d), Tenn. R. App. P.

In most cases, evidence of the price of goods has little probative value, *City Express Service, Inc. v. Rich's, Inc.*, 250 S.E.2d 867 (Ga. App. 1978). It has been held, however, that "the primary measure of damages for loss of property is the cost of replacement on the open market if the article is obtainable in the open market." *Merritt v. Nationwide Warehouse Co., Ltd.*, 605 S.W.2d 250, 256 (Tenn. Ct. App. 1980). We find no fault with the trial court's finding that the value of the goods in good condition was the cost to replace them.

The value of the damaged goods is more problematical, because it appears that once unloaded and cleaned up, some of the goods were in decent condition. But, the only proof of value in the record is Mr. Wheeler's testimony that the goods had no value – when he saw them in the wreck or later when he saw them in Western's warehouse. They were damaged goods, and in his opinion, worthless. The trial judge accepted that testimony as true, and his determination of the witness' credibility is entitled to great weight on appeal. *Quarles v. Shoemaker*, 978 S.W.2d 551 (Tenn. Ct. App. 1998).

Even if we were disposed to say that the pictures show the goods obviously had some value when they were at Western's warehouse, the record is silent as to how that value would compare to

what it cost to salvage them from the wrecked truck and put them in the condition shown. There is therefore no proof that, as the goods were delivered to Ceramic, they had any value.

Western raises a technical point about Mr. Wheeler's testimony that the goods had no value to Ceramic. The point being that the market value is the relevant proof where there is a market in the goods. *See Cook & Nichols v. Peat, Marwick, Mitchell & Co.*, 480 S.W.2d 542 (Tenn. Ct. App. 1971); *Merrit v. Nationwide Warehouse Co., Ltd.*, 605 S.W.2d 250 (Tenn. Ct. App. 1980). Taking his testimony as a whole, however, we think it clearly shows that in his opinion the damaged goods had no value in the relevant market.

### III.

Western raises two more points about Ceramic's duties when the goods arrived in a damaged condition: (1) that they had a duty to accept the goods even though they were damaged, and (2) that they had a duty to mitigate their damages. It seems to us that both points depend on an assumption that the goods had some value when they arrived.

The duty of a consignee to accept damaged goods has been stated in a well-known treatise as follows:

> The duty of the consignee of goods transported by a carrier to accept delivery thereof is not ordinarily excused by the fact that the goods are damaged, unless such damage rendered the property practically valueless, . . . The consignee's remedy in case of partial loss or damage not rendering the property worthless is to accept the goods and sue for damages . . .

Richard R. Sigmon, *Miller's Law of Freight Loss and Damage Claims* (4th ed. 1974). Some of the cases cited for this proposition are *Crinella v. Northwestern Pac. R. Co.*, 259 P. 774 (Cal. App. 1927); *Pacific Heater Co. v. Southern Pac. Co.*, 188 P. 600 (Cal. App. 1920); *Sipple v. Seaboard Airline*, 114 S.E. 435 (Ga. App. 1922). *See also American Ry. v. Pitts*, 91 So. 570 (Miss. 1922). Therefore, if the trial judge's finding that the goods were worthless when they arrived is correct, Ceramic did not have a duty to accept them.

Western is correct that as a general proposition, a plaintiff cannot recover for losses that it might have prevented. *Yates v. Metropolitan Government of Nashville and Davidson County*, 451 S.W.2d 437 (Tenn. Ct. App. 1969). But if the goods were rightfully rejected (because they were worthless) the company had no duty with respect to the rejected goods. *Lazarov v. Arnold Schwinn & Co.*, 183 F.2d 673 (6th Cir. 1950). If the goods were indeed worthless, there was no loss that could have been prevented. Mitigation is not required if it is unduly burdensome or impossible. *Cummins v. Brodie*, 667 S.W.2d 759, 766 (Tenn. Ct. App. 1983). We note our prior observation that there is no proof that what could have been recovered from a sale of the salvaged goods would have exceeded the cost of salvage.

The judgment of the trial court is affirmed, and the cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Western Express, Inc.